UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| JOSE O. GUZMAN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 6:12-CV-42 |
| | § | |
| HACIENDA RECORDS AND | § | |
| RECORDING STUDIO, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Application for Attorneys' Fees and Costs (Docket Entry No. 139),[1] following the Court's entry of final judgment in its favor on Plaintiff Jose Guzman's copyright claim. This Memorandum and Order disposes of the application for attorney's fees only; the Court will rule on the application for costs, which raises a difficult issue of statutory interpretation, in a separate order.

## I.  BACKGROUND

Guzman is a nonagenarian Tejano songwriter and musician who, in the early 1970s, composed a song called "Triste Aventurera." The music and lyrics to *Triste* were placed on a lead sheet and filed with the United States Copyright Office in

---

[1] The Defendants in this case are Hacienda Records and Recording Studio, Inc.; Hacienda Records, L.P.; Latin American Entertainment, L.L.C.; Rick Garcia; and Roland Garcia, Sr. For simplicity, the Defendants are referred to collectively as Hacienda.

1974.  Defendant Hacienda is a record label and recording studio located in Corpus Christi, Texas that focuses primarily on Tejano music.  In 1990, Hacienda released a song titled "Cartas de Amor" on an album recorded by the band the Hometown Boys.  Guzman filed suit against Hacienda on September 20, 2012, asserting claims that Hacienda infringed his copyright in *Triste* through its recording and release of *Cartas* and that Hacienda tampered with copyright management information.  A three-day bench trial was held from March 17–19, 2014.[2]

On December 9, 2014, the Court issued a Memorandum and Order holding that Guzman did not prove by preponderance of the evidence that Hacienda had reasonable access to *Triste* prior to the 1990 release of *Cartas*.  On this basis, the Court ruled in favor of Hacienda on both claims.  On January 29, 2015, the Court entered a take-nothing final judgment against Guzman.  Hacienda now seeks attorney's fees and costs for successfully defending against Guzman's copyright infringement claim.

## II.  DISCUSSION

### A. Governing Law

Under the Copyright Act, courts may award "a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.  "In *Fogerty v. Fantasy,*

---

[2] The Court recounted the facts of the case more thoroughly in its Memorandum and Order following the three-day bench trial.  *See Guzman v. Hacienda Records & Recording Studio, Inc.*, 2014 WL 6982331, at *1–4 (S.D. Tex. Dec. 9, 2014).

*Inc.*, 510 U.S. 517, 534–35 (1994), the Supreme Court held that attorney's fees should be awarded evenhandedly to both prevailing plaintiffs and defendants in copyright actions." *Virgin Records America, Inc. v. Thompson*, 512 F.3d 724, 726 (5th Cir. 2008).  Although awarding attorney's fees is the "'the rule rather than the exception,'" and "'should be awarded routinely,'" *id.* (quoting *Positive Black Talk v. Cash Money Records, Inc.*, 394 F.3d 357, 380 (5th Cir. 2004) , *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010)), the "recovery of attorney's fees is not automatic."  *Id.* (citing *Fogerty*, 510 U.S. at 534).  Indeed, "'attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion.'"  *Id.* (quoting *Fogerty*, 510 U.S. at 534) (alterations omitted).  "The Supreme Court listed several non-exclusive factors that a court may consider in exercising its discretion: 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"  *Id.* (quoting *Fogerty*, 510 U.S. at 534 n.19).

To determine if Hacienda is entitled to an award of attorney's fees as the prevailing party, the Court must first consider, among other factors, the frivolousness or objective unreasonableness of the claims.  "'Objective reasonableness' is generally used to describe claims that have no legal or factual support."  *Viva Video, Inc. v. Cabrera*, 9 F. App'x 77, 80 (2d Cir. 2001) (unpub.).

As Judge Rosenthal has stated, "[t]here is a difference between a suit that is 'without merit' and one that is 'patently frivolous.'" *Collins v. Doe*, 2013 WL 2896822, at *6 (S.D. Tex. June 12, 2013) (citing *Positive Black Talk*, 394 F.3d at 382 n.23). Courts therefore tend to deny attorney's fees when the claims, even if ultimately unsuccessful, are neither objectively unreasonable nor frivolous. *Compare, e.g.*, *id.* at 6, 8 (denying attorney's fees when claims "were neither frivolous nor objectively unreasonable"); *Brewer-Giorgio v. Bergman*, 985 F. Supp. 1478, 1483 (N.D. Ga. 1997) (denying attorney's fees even though "court found that the similarities between the works involved only non-copyrightable ideas and facts" because "the court cannot say that Plaintiffs' complaint and arguments were objectively unreasonable at the time the action was filed.") *with Coles v. Wonder*, 283 F.3d 798, 803–04 (6th Cir. 2002) (upholding district court's award of attorneys' fees to the defendant and affirming the conclusion that the plaintiffs' claims were objectively unreasonable because the legal issues were clear and no case law from any circuit supported the plaintiffs' position); *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 792–95 (S.D. Tex. 2009) (Rosenthal, J.) (awarding attorney's fees to defendant because "there is an obvious and 'profound dissimilarity'" between the two works at issue). Moreover, the Fifth Circuit has affirmed a district court that embraced this distinction. *See Doe*, 2013 WL 2896822, at *6. In *Creations Unlimited, Inc. v. McCain*, the district court

4

concluded that the "Plaintiff's challenge to Defendant's designs, though ultimately not successful, was neither frivolous nor objectively unreasonable" and declined to award the defendant attorney's fees.  889 F. Supp. 952, 954 (S.D. Miss. 1995). Upholding that decision, the Fifth Circuit noted *Fogerty*'s admonition that "attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion," and observed that the district court properly identified, and did not abuse its discretion in applying, the relevant *Fogerty* factors.  112 F.3d 814, 817 (5th Cir. 1997); *see also Womack+Hampton Architects, L.L.C. v. Metric Holdings Ltd. P'ship*, 102 F. App'x 374, 383 (5th Cir. 2004) (affirming district court's denial of attorney's fees because, among other reasons, the district court concluded that the claims were not frivolous).

## B. ANALYSIS

Guzman's allegation that Hacienda infringed his copyright in the song *Triste* is a prime example of an unsuccessful claim that is neither frivolous nor objectively unreasonable.  As a preliminary matter, the Court notes that Guzman's claims survived summary judgment.  *See* Docket Entry No. 97.  This indicates that Guzman's claims were neither patently frivolous nor objectively unreasonable.  In any event, closer examination of the evidence adduced at trial confirms as much. In order to succeed on his claim, Guzman had to prove that (1) he owned a valid copyright in *Triste* and (2) Hacienda copied constituent elements of *Triste* that are

original.  *See Positive Black Talk*, 394 F.3d at 367.  Because Hacienda conceded that Guzman owned a valid copyright, the main issue in contention at trial was the second, "copying," element.  *Guzman*, 2014 WL 6982331, at *4.  To satisfy that element, Guzman had to prove: "(1) factual copying and (2) substantial similarity." *See Positive Black Talk*, 394 F.3d at 367.  But, "[a]s direct evidence of copying is rarely available, factual copying may be inferred from (1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity."  *Id*. at 368 (quoting *Peel & Co. v. The Rug Mkt.*, 238 F.3d 391, 394 (5th Cir. 2001) (footnote omitted)).  The trial thus focused on two questions.  First, did Hacienda have access to *Triste* prior to releasing *Cartas*? And second, was there substantial similarity between *Triste* and *Cartas*?[3]

As to the first question, the Court found that Guzman did not show a reasonable possibility that Hacienda had access to *Triste*.  Far from the "access" inquiry being patently frivolous or even objectively unreasonable, this issue was not an easy call.  Guzman introduced evidence including that "*Triste* was performed in and around the Corpus Christi area in the 1970s through the 1990s, appeared on the radio in Corpus Christi, and was performed a handful of times in

---

[3] The evidence concerning "probative similarity," which informs the circumstantial access inquiry, overlapped with that concerning "substantial similarity," which is a separate element requiring the degree of similarity necessary to establish copying.  *See Guzman*, 2014 WL 6982331, at *4 n.6.  Incidentally, the Court stated that "[a]lthough the Court need not reach this issue, the Court easily would have concluded that Guzman showed probative similarity between *Triste* and *Cartas*."  *See id*.  Thus, the only two issues for resolution at trial were access and "substantial similarity."

Lubbock." *Guzman*, 2014 WL 6982331, at *6.  The Court conducted a thorough and extensive analysis of this and other evidence adduced at trial, and while it ultimately disagreed with Guzman's view that the evidence supported an access finding, it was question on which reasonable factfinders may disagree.  *See* Docket Entry No. 97 at 3 ("It is a closer question whether Guzman can demonstrate that Defendants had 'access' to . . . '*Triste Aventurera*.'   Nevertheless, given the summary judgment evidence presented by Guzman, the element of access remains a genuine issue of triable fact.").

In addition, the Court noted that the evidence favored Guzman on the second element "of substantial similarity."  *Guzman*, 2014 WL 6982331, at *5 ("[T]he Court believes that *substantial similarity exists* between the songs[.]" (footnote omitted) (italics added)).   Because "Guzman's inability to prove [reasonable] access mean[t] a full ruling on the 'substantial similarity' element [was] unnecessary" in the Court's previous order, the Court will now flesh out that ruling more fully as it further demonstrates why Guzman's claim was not objectively unreasonable.[4]   *See id.* at *5 n.7 (noting simply that the Court reached its "substantial similarity" decision "based

---

[4] Even now, the "substantial similarity" analysis that follows is not meant to be comprehensive or thorough by any mean.  The purpose of the inquiry is merely to demonstrate why, in the context of whether to award attorney's fees, the evidence adduced at trial does not support a *Fogerty* finding of objective unreasonableness or frivolousness in this case.

on the extensive expert testimony concerning the songs and [the Court's] own review of the songs").

Substantial similarity is a nebulous concept, presenting "one of the most difficult questions in copyright law, and one that is the least susceptible of helpful generalizations." *See* MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 13.03[A]. What is clear is that "slight or trivial similarities are not substantial and are therefore noninfringing." *Id*. "But it is equally clear that two works may not be literally identical, and yet, for purposes of copyright infringement, may be found to be substantially similar." *Id*. Thus, "[s]omewhere between the one extreme of no similarity and the other of complete and literal similarity lies the line marking off the boundaries of 'substantial similarity.'" *Id.*

In the Fifth Circuit, the "substantial similarity" inquiry involves "a side-by-side comparison . . . between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'" *See Positive Black Talk*, 394 F.3d at 374 (quoting *Creations Unlimited*, 112 F.3d at 816 (footnote omitted)). "Two works are substantially similar if the expression of ideas in the plaintiff's copyrighted work and the expression of ideas in the defendant's work that are shared are substantially similar," with [t]he test for expression of ideas [being] whether the intended audience would find the total concept and feel of the two songs to be substantially similar." *Id*. at 373. Here, listeners of Tejano music

8

comprise the intended audience of *Triste* and *Cartas*.  The determinative question is thus whether an ordinary observer of Tejano music would, as between these two songs, "detect piracy 'without any aid or suggestion or critical analysis by others.'" *Peel*, 238 F.3d 391, 398 (5th Cir. 2001) (quoting *Harold Lloyd Corp. v. Witwer*, 65 F.2d 1, 18 (9th Cir. 1933)).  Moreover, the factfinder must also determine the qualitative importance of the copied parts in relation to the overall copyrighted work.  *See Baxter v. MCA, Inc.*, 812 F.2d 421, 425 (9th Cir. 1987) ("Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity.").

Cartas* is not identical to *Triste*.  However, the dissimilarities in the two songs—including the tempo, duration, key, different lyrics after the first verse, and different instrumental introduction and song breaks—do not mean that *Cartas* is not substantially similar to *Triste*.  The Court finds these stylistic differences to be outweighed by the substantial similarities that permeate throughout the song.  Some of the more striking examples are detailed below.

First, the first verse of both songs goes beyond mere substantial similarity.  Indeed, the lyrics in the first verse of *Cartas*—"Yo tengo en mi poder unas cart<u>as</u> de amor que tu me la<u>s</u> mandaste<u>s</u> pidiendo compassion (I have in my possession love letters that you have sent me asking for compassion)"—are virtually identical to the first words of *Triste*—"Yo tengo en mi poder una carta de amor que tu me la

mandaste pidiendo compassion (I have in my possession a love letter that you have sent me asking for compassion)."   The opening lyrics are thus exactly the same except for the presence of an "s" following the words "carta" and "una" in *Cartas*, an edit which functions solely to change the words from singular to plural form. This minor change does not affect the conclusion that the lyrics of the two songs are substantially similar.   *See Sid & Mary Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1167 (9th Cir. 1977) ("Duplication or near identity is not necessary to establish infringement.").   Even Hacienda's expert conceded that the lyrical similarities between *Cartas* and *Triste* were not just substantial, but were somewhere between striking and identical.   *See* Tr. Transcript Vol. 3 at 274–76.

Moreover, as a qualitative matter, the Court finds that the location of the similar lyrics in relation to other portions of the song is particularly important. Both songs begin with these lyrics, meaning that these are the first words the listener hears to each song.   The lyrics are more important based on their placement in the song.   *See* NIMMER & NIMMER, *supra*, § 13.03[A] ("[E]ven if the similar material is quantitatively small, if it is qualitatively important, the trier of fact may properly find substantial similarity."); *see also Iowa State Univ. Research Found., Inc. v. American Broadcasting Cos.*, 463 F. Supp. 902 (S.D.N.Y. 1978), *aff'd*, 621 F.2d 57 (2d Cir. 1980) (holding that defendant committed copyright

infringement by broadcasting one 12-second segment from the plaintiff's film). And, combined with the other similarities between the songs, the lyrical similarity is more than *de minimis*.  *See Elsmere Music, Inc. v. National Broadcasting Co.*, 482 F. Supp. 741 (S.D.N.Y. 1980), *aff'd*, 623 F.2d 252 (2d Cir. 1980) ("Although it is clear that, on its face, the taking involved in this action is relatively slight, on closer examination it becomes apparent that this portion of the piece, the musical phrase that the lyrics 'I Love New York' accompany, is the heart of the composition.  Use of such a significant (albeit less than extensive) portion of the composition is far more than merely a de minimis taking.").

Some of these other similarities involve the rhythmic patterns of the two songs—the first five measures of the first verse in *Cartas* are rhythmically identical to *Triste* and both songs are in 2/4 polka-style meter.   Yet more similarities involve the songs' respective melodies.  The Court is "mindful of the limited number of notes and chords available to composers and the resulting fact that common themes frequently reappear in various compositions, especially in popular music."  *Gaste v. Kaiserman*, 863 F.2d 1061, 1068 (2d Cir. 1988).  For that reason, the mash-up audio sample created by Guzman is particularly helpful in comparing and contrasting the two songs.  In it, the two songs are superimposed, one after the other.  *See* Docket Entry No. 115-44 (Pl.'s Ex. 50).  The mash-up demonstrates that the parallels between *Cartas* and *Triste* are substantial.  What is

11

most notable is that what is known as "melisma" occurs at precisely the same point in both songs: on the same syllable, in the same word, in the same place of the phrase, specifically on the italicized portion of the word "compass*ion*."  Melisma is the singing of a single syllable of text while moving between several different notes.  *See* OXFORD DICTIONARY OF ENGLISH, Vol. IX 580 (2d. Ed. 1991) (defining "melisma" as "in singing, the prolongation of one syllable over a number of notes").  The Court also notes that the chord progressions underlying the melodies are substantially similar, and the pitch sequence of *Cartas*'s bass line is highly similar to *Triste*.

The Court also finds that the instrumentation and accompaniment of both songs are substantially similar, including the use of the following instruments: accordion, *bajo sexton*—an instrument similar to a guitar but with twelve strings, instead of six—drums, and bass.  With respect to tempo and duration, *Triste* and *Cartas* are very similar: *Triste* is approximately 109 beats per minute and is 2:38 in duration, while *Cartas* is slightly slower at 101 beats per minute and is 2:41 in duration.  Neither tempo nor duration change the identity of a song.  While the songs are in different keys (*Triste* is written in the key of A flat major, while *Cartas* is in the key of C major), that does not change the underlying DNA of the song; the intervals between notes are the same and, when transposed, the similarities are substantial.  In sum, there is ample evidence demonstrating that the

*Triste* and *Cartas* are substantially similar.

In light of Guzman prevailing on the "substantial similarity" element and presenting a compelling if ultimately unsuccessful case of "copying," two of the main considerations in the Court's attorney's fees calculus—whether the claim was frivolous or objectively unreasonable—counsel against awarding attorney's fees. So do the remaining *Fogerty* factors. The evidence does not suggest that Guzman brought this suit in bad faith nor does the record show any "direct evidence of an improper motive," *see Randolph*, 634 F. Supp. 2d at 795, to support a bad faith finding. Rather, the record supports the conclusion that Guzman believed he had a legitimate copyright claim, first attempted to resolve it with Hacienda through a cease-and-desist letter, and only filed suit after that effort was unsuccessful. Indeed, the evidence shows that Guzman sought to enforce his rights in *Cartas* against other record labels: he contacted Freddie Records and told them that *Cartas* was the same as *Triste*, and thereafter received a check from Freddie Records for $189.53. *Guzman*, 2014 WL 6982331, at *4.

Because the Court concludes that this case was not frivolous, objectively unreasonable, or brought in bad faith, awarding attorney's fees is not necessary to promote special considerations of compensation or deterrence. *See Bergman*, 985 F. Supp. at 1484 ("Although Defendants prevailed on a motion for summary judgment, the court does not believe that this action is a frivolous one that would

require an award of fees to deter the filing of future frivolous claims. In fact, the court believes that parties in Plaintiffs' position should not be discouraged from seeking protection of their rights in court under the Copyright Act."); *Collins*, 2013 WL 2896822, at *6 ("The imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." (quoting *Matthew Bender & Co. v. West Pub'g Co.*, 240 F.3d 116, 122 (2d Cir. 2001)).   Hacienda argues that an award of attorney's fees "is necessary to deter further frivolous claims by a vexatious party and counsel," *see* Docket Entry No. 139 at ¶ 18, pointing out that "[t]his case is one of two cases filed by Mr. Guzman, and one of five cases being prosecuted against Hacienda and the Garcia family by Plaintiff's counsel."   *See id*. at ¶ 3. With respect to Mr. Guzman, it is true that he recently lost his second copyright infringement case against Hacienda after a three-day jury trial in this Court.   *See Guzman v. Hacienda Records, L.P., et al.*, No. 6:13-cv-41 (S.D. Tex. June 22, 2015) (Docket Entry No. 105).   But, there too, Guzman's claims survived a defense motion for summary judgment.   *See id.* at Docket Entry No. 61.   As for Hacienda's focus on the role of plaintiff's counsel, the Court does not understand why other lawsuits he has brought should affect the decision whether to require this plaintiff to pay fees.   Even as to Mr. Showalter, the Court notes that he did prevail on one infringement claim in a bench trial against Hacienda.   *See Tempest*

*Pub., Inc. v. Hacienda Records & Recording Studio, Inc*,

2015 WL 1246644, at *1 (S.D. Tex. Mar. 18, 2015).   Hacienda's deterrence argument is therefore unpersuasive.

For these reasons, the Court declines to exercise its discretion to award attorney's fees.

## III.   CONCLUSION

Defendants' application (Docket Entry No. 139) is **DENIED** with respect to the Application for Attorney's Fees.   The Court reserves ruling on Defendants' Application for Costs through a separate order.

**SIGNED** this 30th day of July, 2015.

_____
Gregg Costa
United States Circuit Judge[*]

---

[*] Sitting by designation.